ROTHENBERG, J.
(dissenting).
Thomas Amador. (“Amador”) .appeals from the final order issued by the State of Florida’s Division of Administrative Hearings (“DOAH”), rejecting the Administrative Law Judge’s (“ALJ”) Recommended Order on Remand. Specifically, the ALJ recommended: (1) dismissal of the administrative complaint filed against Amador under the School Board of Monroe County Bylaws and Policies and various state statutes; and (2) immediate reinstatement of Amador’s employment. Because:. (1) the complaint alleges violations of both School Board Policy 4210 and 4120; (2) the ALJ improperly limited, his review to School Board Policy 4210; and (3) the record supports termination under both School Board Policy 4210 and 4120, DOAH’s order terminating Amador’s employment should be affirmed. • ■
' The majority opinion recognizes that the complaint alleges violations of both School Board Policy 4210 and 4120. The majority opinion, however, suffers from the same infirmity as the ALJ’s Recommended Order on Remand—it' fails to address the violations of School Board Policy 4120, and limits its review to the ALJ’s.findings regarding School Board Policy 4210. For the reasons that'follow, I disagree with the majority ’ opinion’s findings regarding School Board Policy 4210, and because the majority opinion has found-no error as to *859 DOAH’s findings regarding School Board Policy 4120, affirmance is required.
The Factual and Procedural Background
Amador was employed by the Monroe County School Board as an air conditioning mechanic from 2006 through 2012. During his employment, Amador’s performance steadily declined. The record conclusively reflects that Amador received unfavorable evaluations, reprimands, warnings, and both informal and formal discipline on a number of occasions. Specifically, Amador was counseled and disciplined numerous times for: failing to follow written procedures, policies, and directions; showing up late for work; not being at work during working hours; not keeping proper and accurate logs; and other acts of insubordination.
For example, in August’of 2008, Amador was suspended for insubordination due to belligerent and disruptive conduct. He was also suspended for three days in 2009 for leaving the workplace during work hours and for theft of time. During the 2009 disciplinary process, Amador was informed that he must notify his supervisor or secretary if he was going to be away from the workplace. In August of 2010, Amador was disciplined for failing to return to work after expiration of an approved leave. On February 8, 2011, Jeff Barrow, the Assistant Director of Facilities, sent Amador a written warning.emphasizing the need for Amador to keep accurate truck logs.and that his failure to do so would lead to disciplinary action against him. On October 6,2011, Mr. Barrow sent Amador a written memo warning Amador that he needed to “[g]et to work on time and get out to work in a timely manner.”
In January of 2012, Monroe County’s Superintendent of Schools filed an, administrative complaint seeking termination of Amador’s employment. As the majority opinion readily concedes, the complaint alleges violations under both section 4120 and section 4210, with specific references to subsection of section 4210,1, L, and Q of The School Board of Monroe County Bylaws and Policies, along with various state statutes. The complaint alleges violations “including but .not limited to: Theft of, time; inappropriate use of a District owned vehicle; Insubordination; and Fraudulent statements in required District paperwork and logs,”
Specifically the complaint alleges the following:'
Petitioner, DR. JESUS JARA, Superintendent of Schools of Monroe County, Florida, files this Administrative Complaint, pursuant to Chapters 120, 1001 and 1012, Florida Statutes (2003), Rules 6B-1.001, 6B-1.006, and 6B-4.009, Florida Administrative Code, and the Policies of the School District of Monroe County, Florida and states as follows:
[[Image here]]
6. At all times pertinent hereto, the Respondent was employed as an Air-conditioning Mechanic in the Upper Keys in the Monroe County School District.
7. On November 17th, 2011 Jeff Barrow (Respondent’s supervisor) met with Respondent, THOMAS AMADOR, to discuss allegations that he violated School Board Policy, by, including but not limited to: Theft of time; Inappropriate use of a District owned vehicle; Insubordination; and Fraudulent statements in required District paperwork and logs.
8. School Board Policy provides 4120 provides;
4120-EMPLOYMENT OF SUPPORT STAFF
Support employees include all those employees who work in noninstructional, noncontracted roles and serve at the pleasure of the School Board subject to *860 dismissal, transfer, promotion, or resignation and the provisions of the collective bargaining agreement.
[[Image here]]
Any support staff member’s misstatement of fact material to qualification for employment or the determination of salary shall be considered to constitute grounds for dismissal.
All support personnel shall become familiar with the policies of the Board and other such policies, regulations, memo-randa, bulletins, and handbooks that pertain to their duties in the District. Any support staff member employed by the Board who shall be guilty of any willful violation of the policies of the Board shall be guilty of gross insubordination and shall be subject to dismissal or such other lesser penalty as the Board may prescribe, (emphasis added)
[[Image here]]
9. That the Respondent violated School Board Policy 4120 by willful violation of the policies of the Board, including School Board Policy 4210 and is subject to dismissal for such violation.
10. School Board Policy 4210, Entitled Standards of ethical conduct provides in relevant part;
4210—STANDARDS OF ETHICAL CONDUCT
An effective educational program requires the services of men and women of integrity, high ideals, and human understanding. The School Board expects all support staff members to maintain and promote these essentials.
Furthermore, the Board hereby establishes the following as the standards of ethical conduct for all support staff members in the District who have direct access to students:
A support staff members with direct access to students shall:
[[Image here]]
I. not use institutional privileges for personal gain or advantage.
[[Image here]]
L. maintain honesty in all dealings.
[[Image here]]
Q. not submit fraudulent information on any document in connection with employment.
Thus, as the majority opinion recognizes, the administrative complaint alleges that Amador “violated School Board Policy 4120 by willful violation of the policies of the Board, including School Board Policy 4210 and is subject to dismissal for such violation.” The allegations in the complaint charging theft of time identify two specific dates (October 18, 2011 and October 21, 2011), provide the grounds for disciplinary action, and list the prior notices Amador was given regarding this issue. Amador’s inappropriate use of District-owned vehicles is also alleged. Specifically, the complaint alleges that during the thirteen days examined, there were 205 unaccounted for miles on the truck Amador drove, the locations Amador claimed to have worked at on his truck logs did not match the locations he listed on his daily log sheets/work orders, and Amador was seen in his District-owned vehicle at locations unrelated to work. Lastly, the complaint listed the various instances of conduct constituting fraud.
Amador requested, and he received, an administrative hearing, after which the ALJ issued a recommended order. Despite the School Board’s January 19, 2012 formal written notice to Amador that he was being suspended for: (1) insubordination under section 4120; and (2) willfully violating section 4210 I, L., and Q., with a recommendation for termination, and despite the fact that the administrative complaint filed on the same date alleges the same violations with more specificity, the ALJ found that the complaint to terminate *861 Amador’s employment was based solely on alleged violations of School Board Policy 4210. The ALJ then concluded that School Board Policy 4210 only applies to employees with direct access to students, there was no evidence that Amador had direct access to students, and thus it was unnecessary to reach the merits of the School Board’s claims. Based on these findings, the ALJ recommended dismissal of the complaint and reinstatement of Amador’s employment.
The School Board timely filed its exceptions to the recommended order. Among its exceptions, the School Board argued that the ALJ erred by: finding that School Board Policy 4210 did not apply to Amador as Amador’s duties placed him in positions where he had direct access to students; not considering School Board Policy 4120, where the complaint contained allegations and there was evidence presented regarding the violation of School Board Policy 4120; and finding that the failure to attach the collective bargaining agreement to the complaint was fatal.
Based on the School Board’s exceptions and the ALJ’s failure to consider the evidence, DOAH remanded the case back to the ALJ to rule on the merits of the underlying allegations of misconduct as required by Rule 28-106.216 of the Florida Administrative Code. On remand, rather than following DOAH’s directive and ruling on the underlying allegations of misconduct alleged in the complaint, the ALJ issued a Recommended Order on Remand which again failed to analyze the evidence under either School Board Policy 4120 or 4210 and again recommended dismissal of the complaint and reinstatement of Ama-dor’s employment. The ALJ’s recommendations on remand were based, in part, on his findings that Amador was not charged with insubordination; School Board Policy 4210 only applies to employees who have direct access to students and “[t]he record is devoid of evidence that [Amador] has such access”, and the failure to refer to or include the collective bargaining agreement as a part of the record was a fatal error.
The School Board filed its exceptions to the ALJ’s recommendations on remand. The School Board disputed the ALJ’s interpretation of “direct access” in School Board Policy 4210, identified evidence in the record showing that Amador had direct access to the students, and therefore objected to the ALJ’s finding that School Board Policy 4210 did not apply to Ama-dor. The School Board additionally excepted to the AL J’s findings that the complaint to terminate Amador’s employment was based solely on alleged violations of School Board Policy 4210 and that dismissal of the complaint was required because the collective bargaining agreement was not included in the record. Lastly, the School Board claimed that there was competent substantial evidence in the record that Amador’s conduct constituted insubordination in violation of School Board Policy 4120.
DOAH ultimately issued a final order, accepting the School Board’s exceptions and terminating Amador’s employment with the School Board of Monroe County. It is this order which Amador now appeals.
ANALYSIS
A. Does School Board Policy 4210 Apply to Amador and if so, did Amador violate this Policy?
School Board Policy 4210 sets forth the standards of ethical conduct for support staff members who have direct access to students. As previously stated, the School Board alleged that Amador violated the following standards:
I. not use institutional privileges for personal gain or advantage.
*862 [[Image here]]
L. maintain honesty in all dealings.
[[Image here]]
Q. not submit fraudulent information on any document in connection with employment. . . '
Because “direct access” is not defined, the parties disagreed on how to apply this provision and whether the evidence established the requisite degree of student access.
Although the ALJ did not attempt to determine what “direct access” means, in his" recommended order on remand, the ALJ concluded that School Board Policy 4210 did not apply to Amador because “[t]he record is devoid of evidence that [Amador] has such Access, and the nature of his position (an air-conditioning meóhanic) does not permit the undersigned to infer as much.” Because the record does not support the ALJ’s finding on this point, DOAH did not erf by adopting the School Board’s exception to this finding.
The record established that Amador often maintained and repaired air conditioning units at District Schools while school was in session and while students were present. The School Board noted that the Jessica Lunsford Act and section 1012.465(1), Florida Statutes, require background ■ screening for “noninstructional school district employees or contractual personnel who are permitted access on school grounds when students are present, who have direct contact with students or who have access to or control of school funds.” The School Board therefore argued that if the Jessica Lunsford Act and section 1012.465(1) apply to Amador because his employment permits access on school grounds -when students are present, the ethical standards set forth in School Board Policy 4210 should be similarly, applied to Amador. DOAH agreed with the School Board.
The majority does not address the undisputed record evidence that Amador, who was responsible for the maintenance of air conditioning units on school grounds, had direct access to students because he worked outside and inside schools during school hours while students were present. Instead the majority merely relies on the ALJ’s conclusion that there was no evidence that Amador had direct accéss to students. However, the ALJ either ignored the undisputed evidence or concluded that working in areas while students, are present is not direct access. In either event, because working inside schools during school hours in areas where students are present obviously placed Amador in the category of employees who have direct access to students, the record did not support the ALJ’s determination. Thus, DOAH was not required to adopt this finding by the ALJ and properly adopted the School Board’s exceptions to this finding.
B. Was School Board Policy 4120 properly pled?
As the majority concedes, the answer to this question is “yes.” The complaint alleges in paragraph 7, that Jeff Barrow, Ama-dor’s supervisor, met with Amador on November' 17⅛-2011, to discuss allegations that Amador “violated School Board Policy, by, including but not limited to: Theft of time; Inappropriate use of District owned vehicle; Insubordination; and Fraudulent statements in District paperwork and logs.” Paragraph 8 of the complaint recites the relevant provisions of School Board Policy 4120, and paragraph 9 of the complaint alleges that Amador violated School Board Policy 4120;
One of the relevant provisions of School Board Policy 4120 included in the complaint specifies: :
All support personnel shall become familiar with the policies of the Board and *863 other such policies, regulations, memo-randa, bulletins, and handbooks that pertain to their duties in the District. Any support staff member employed by the Board who shall be guilty of any willful violation of the policies of the Board shall be guilty of gross insubordination and shall be subject to dismissal or such other lesser penalty as the Board may prescribe.
(emphasis added). Further, paragraph 9 of the complaint states that Amador “violated School Board Policy 4120 by willful violation of the policies of the Board, including School Board Policy 4210 and is subject to dismissal for such violation.” (emphasis added). It is therefore clear that the complaint alleges violations of both School Board Policy 4210 and School Board Policy 4120. It is also clear that DOAH’s finding that the ALJ failed to acknowledge that Amador was subject to dismissal under School Board Policy 4120, not just 4210, is supported by the record.
C. Does a finding that Amador did not have “direct access” to the students, as required by School Board Policy 4210, have any relevance to the violations of School Board Policy 4120 alleged in the complaint?
The majority opinion makes the same mistake the ALJ made. After concluding that School Board Policy 4210 only applies to support staff with direct access to students and that Amador did not have that direct access, the ALJ and the majority have failed to address Amador’s clear violations of School Board Policy 412Q, which, unlike School Board Policy 4210, does not require direct access to students. Whereas School Board Policy 4210 limits its application to support staff with direct access to students, School Board Policy 4120 applies to all support staff.
, School Board Policy 4120 states the following:
Support employees include all those employees who work in noninstructional, noncontracted roles and serve at the pleasure of the School Board subject to dismissal, transfer, promotion, or resignation and the provisions of the collective bargaining agreement.
[[Image here]]
Any support staff member’s misstatement of fact material to qualification for employment or the determination óf salary shall be considered to constitute grounds for dismissal.
All support personnel shall 'become familiar with the policies of the Board and other such policies, regulations, memo-randa, bulletins, and handbooks that pertain to their duties in the District. Any support staff member employed by the Board who shall be guilty of any willful violation of the policies of the Board shall be guilty of gross insubordination and shall be subject to dismissal or such other lesser penalty as the Board may prescribe, (emphasis added)
[[Image here]]
There is no dispute that Amador was a support staff employee. DOAH found that Amador violated School Board Policy 4120 by willfully violating the policies of the Board and that he was guilty of gross insubordination.
D. Is there competent substantial evidence to support DOAH’s finding that Amador violated School Board Policy 4120?
As will be detailed below, Amador habitually clocked in for work late, took unauthorized breaks, and failed to keep accurate work and vehicle .logs. The evidence of these violations was unrefuted. Thus, DOAH’s finding of gross insubordination is supported by competent substantial evidence.
*864 Mr. Barrow testified that Amador was required to clock into work by 7:00 a.m., and he was entitled to take a one-hour lunch break, commencing between the hours of 11:00 a.m. and 1:00 p.m., plus two fifteen-minute breaks to be taken at around 9:00 a.m. and 2:00 p.m. each day. Employees are permitted to leave their work area for lunch so long as they return within one hour. A lunch break taken by maintenance employees later than 1:00 p.m. requires approval from their supervisor, Jeff Barrow, and break times cannot be added to lunch time. Mr. Barrows confirmed that both the School Board’s policies and the collective bargaining agreement prohibit extending a meal break by combining the break periods, and he testified that this prohibition was discussed at meetings he had with Amador. Amador was also required to keep accurate daily work logs and vehicle logs.
The unrebutted evidence established that, although Amador was regularly advised that he needed to report to work on time, he clocked in late for work thirty-one out of the thirty-six days monitored by the School Board, between November 22, 2010 and January 27, 2011. Additionally, on October 18, 2011, a day in which Amador’s conduct was being monitored by the School Board, Amador attended a meeting in Key West that Concluded at 11:30 a.m. but Amador did not return to work until just before 4:00 p.m. to clock out for the day. Even if Amador’s explanation regarding October 18, 2011 is accepted as true, by his own admission, he took an unapproved late lunch that extended past the one-hour limit.
The unrebutted physical evidence also established that Amador failed to keep accurate work and vehicle logs. His work and vehicle logs did not match. For example, his vehicle logs for October 4, 10, and 11 of 2011 list school locations where Ama-dor had no work tasks—a fact established by the work orders and daily logs for those dates, and although Amador claimed on his daily work log for October 13, 2011 that he performed tasks at two schools, his vehicle log for that date is blank. In fact, the evidence established fifty-four unexplained discrepancies between Amador’s work logs and vehicle logs.
Each day, after clocking in for work, Amador was required to monitor the temperatures by computer for his assigned schools and then complete any paperwork associated with the repairs he had made on the previous day. The time spent on these tasks were reported on Amador’s work log. Although these tasks, together, should take less than one hour, and Ama-dor was required to document accurately the time he actually spent, his entries on every log sheet for these tasks was two hours. Additionally, the unrefuted evidence is that these log entries were photocopied.
School Board Policy 4120 required Ama-dor to be familiar with the policies and regulations that pertained to his duties. Amador’s duties included reporting for work on time, accurately reporting the time he spent on each task, keeping accurate work and vehicle logs, obtaining prior permission to take a late lunch, and limiting his lunch breaks to one hour. The unrefuted evidence is that Amador was aware of each of these requirements. He was actually previously warned and even suspended for earlier violations of these requirements. The unrefuted evidence also showed that despite prior warnings, Ama-dor regularly reported to work late and habitually did not keep accurate work and vehicle logs. Thus, DOAH’s finding of gross insubordination is supported by competent substantial evidence, and because termination of Amador’s employment is a penalty option based on a violation of School Board Policy 4120, DOAH’s order *865 terminating Amador’s employment should be affirmed.
E. The majority’s failure to address the violations of School Board Policy 4120
The majority opinion appears to have mistakenly conflated the requirements and limiting language of School Board Policy 4210 with School Board Policy 4120 and has omitted any analysis or explanation for its reversal of the School Board’s termination of Amador’s employment based on Amador’s violations of School Board Policy 4120. The majority opinion then finds that the ALJ’s findings and recommendations are supported by competent substantial evidence, and thus the majority concludes that DOAH was required to adopt them. However, the ALJ did not address School Board Policy 4120, nor evaluate the evidence, which was mainly unrefuted, regarding the violations of School Board Policy 4120. It is therefore difficult to understand how the majority reached its conclusion that the ALJ’s findings and recommendations relevant to School Board Policy 4120 was supported by competent substantial evidence.
While I agree with the general principles regarding the adoption of a hearing officer’s findings, these general principles do not apply here where the hearing officer failed to make any findings as to the misconduct alleged in the complaint specific to School Board Policy 4120, despite DOAH’s two directives to the ALJ to make this finding.
F. Does the failure to reference the collective bargaining agreement in the complaint or include it in the record require dismissal of the complaint?
The ALJ answered this question in the affirmative. DOAH, by adopting the School Board’s exceptions, however, concluded otherwise. Although the majority has failed to address his issue, DOAH clearly reached the correct conclusion. Florida Administrative Code Rule 28-106.2015 sets forth the pleading requirements for an administrative complaint. Rule 28-106.2015 does not include the requirement to attach or reference the collective bargaining agreement in an administrative complaint. Thus, dismissal of the complaint was not required based on these arguments. Additionally, any defect in the complaint was waived by Amador.
Rule 28-106.2015 states, in pertinent part:
(4) The agency’s administrative complaint shall contain:
(a) The name of the agency, the respondent or respondents against whom disciplinary action is sought and a file number.
(b) The statutory section(s), rule(s) of the Florida Administrative Code, or the agency order alleged to have been violated.
(c) The facts or conduct relied on to establish the violation.
(d) A statement that the respondent has the right to request a hearing to be conducted in accordance with Sections 120.569 and 120.56, F.S., and to be represented by counsel or other qualified representative.
The complaint complied with each of these provisions. If Amador wished to attack the sufficiency of the complaint, then he was required to file a motion to dismiss the complaint pursuant to Florida Administrative Code Rule 28-106.204(2) within twenty days of the assignment of an ALJ in a DOAH proceeding. Because Amador failed to file a motion to dismiss the complaint, he waived the right to challenge the sufficiency of the complaint based on the failure to reference or attach the collective bargaining agreement.
*866 CONCLUSION
The ALJ failed to consider the evidence in this case despite DOAH’s specific instructions to the ALJ on remand. The ALJ’s failure to consider evidence is based on its incorrect findings that: (1) School Board Policy 4120 was not properly pled in the complaint; (2) School Board Policy 4210 could not be applied because there was no evidence that Amador had direct access to students; and (3) the School Board’s failure to reference or attach the collective bargaining agreement precluded review. However, as the majority concedes, the complaint clearly and unequivocally charged Amador with violating both School Board Policy 4210 and 4120. Second, the record evidence clearly established Amador’s direct access to students. The undisputed evidence was that Amador maintained and repaired air conditioning units inside and outside the school buildings while school was in session and with students present. Third, even if we were to conclude that DOAH erred by failing to adopt the ALJ’s findings as to School Board Policy 4210, we must still affirm the order under review because the ALJ made no findings as to School Board Policy 4120 and DOAH’S findings as to School Board Policy 4120 are supported by competent substantial evidence. Fourth, there is no requirement that the collective bargaining agreement be referenced in or attached to the complaint, and Amador waived any objection by failing to file a motion to dismiss the complaint. Accordingly, the fir nal judgment terminating Amador’s employment should be affirmed.
Although the majority appears to base its decision to reverse the final judgment upon the premise that DOAH improperly reweighed the evidence, DOAH did not reweigh- the evidence. It simply reviewed the evidence itself after the ALJ refused to do so even after DOAH instructed the ALJ to reach the merits on remand.. A “reweighing” of the evidence infers that the evidence was initially weighed by the ALJ. Since the ALJ failed to reach the merits after directed to do so on remand, he did not weigh the evidence. DOAH was therefore left with no choice but to review the record and make these determinations itself.
Accordingly,. I dissent.